UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                                             Case No. 22-CR-252

MATTHEW BROWNDORF,

          Defendant.

## UNITED STATES' SENTENCING MEMORANDUM

The United States, by and through its undersigned counsel, submits the following memorandum to aid the Court in sentencing defendant Matthew Browndorf.

The defendant is a fraudster, who used his legal education and multi-faceted holding company to steal from his employees and cheat the IRS. His crimes only stopped after he was detained in another federal criminal case. And in his wake, the defendant left a trail of broken companies and hurt people.

Given the aggravated nature of his misconduct, his lack of respect of the law, the serious harms he caused, and the need to advance general deterrence, the government respectfully requests that the Court sentence the defendant to 46 months' imprisonment.[1]

---

[1] In the plea agreement, the government agreed to recommend a sentence no higher than the low-end of the Guideline range calculated by the Court. *See* Dkt. No. [15] at ¶ 21. The government's instant recommendation comports with that obligation, insofar as the government expects defendant's Guideline range to be 46-57 months' imprisonment. If the Court calculates a different range at defendant's sentencing hearing, the government will adjust its recommendation to ensure compliance with the plea agreement.

1

I.    **Procedural Posture**

   A.    **This Case in Wisconsin**

On December 6, 2022, a grand jury sitting in the Eastern District of Wisconsin returned an indictment charging the defendant in eleven counts. *See* Dkt. No. [1]. Count 1 through Count 9 alleged Browndorf had willfully failed to collect and pay over taxes, in violation of 26 U.S.C. § 7202. *Id.* Count 10 alleged Defendant had embezzled from an employee pension benefit plan, in violation of 18 U.S.C. § 664. *Id.* And Count 11 alleged Defendant had embezzled from a health care benefit program, in violation of 18 U.S.C. § 669. *Id.* All of the charges related to defendant's misconduct vis-à-vis his holding company Plutos Sama and one of its subsidiaries, the BP Peterman law firm, formerly of Brookfield. *Id.*

On July 13, 2023, Defendant pled guilty to Count 9, pursuant to a plea agreement with the government. *See* Dkt. No. [16]. In the plea agreement, the government agreed: (i) to dismiss the remaining counts at sentencing; and (ii) to recommend a sentence no higher than the low-end of the defendant's Guideline range, as determined by the Court. *See* Dkt. No. [15] at ¶¶ 8, 21. The defendant, for his part: (i) agreed to pay the IRS $435,144.55 in restitution; (ii) agreed to pay former Plutos Sama employees $401,393.70[2] in restitution; (iii) acknowledged he was guilty of Count 9; and (iv) conceded that he had "failed to appropriately direct remittances into employee pension benefit plans and employee health benefit programs associated with Plutos Sama-related entities, causing certain employees substantial financial hardship." *Id.* at ¶¶ 4, 27, Attachment A.

The defendant's sentencing hearing is scheduled for 10:00 a.m. on November 30, 2023.

---

[2] Agents now calculate that defendant owes $396,115.51 in remaining restitution; this latter figure is reflected in the PSR and controls, by the government's lights. *See* PSR ¶ 124.

### B. Defendant's Maryland Case

Earlier last year, the defendant was also charged with four counts of wire fraud and four counts of money laundering by a grand jury sitting in the District of Maryland. *See* PSR ¶ 55. Defendant is awaiting trial for these other crimes, with a status conference set for December 5, 2023.

### C. Defendant is Detained

While the defendant was on pretrial release in both cases, his daughter was arrested in connection with a brazen murder in California.[3] *See* PSR ¶ 57. The defendant's daughter hid at his home after the shooting, and when officers executed a search warrant at defendant's residence, they discovered that the defendant had stolen furniture worth "approximately $32,577.80." *Id.* He was arrested on August 23, 2023, for grand theft, and posted bail. *Id.*

In October, a federal magistrate in Maryland detained the defendant pending trial, based on both this theft and the defendant's lie regarding his income in his rental application. *Id.* ¶ 5.

## II. The Familiar Standard

When imposing sentence, this Court must consider the factors set forth in 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[3] *See* "2 arrested for deadly shooting in Irvine," available: https://ktla.com/news/local-news/2-arrested-for-deadly-shooting-in-irvine-neighborhood/ (last visited November 22, 2023).

(2) the kinds of sentences available;

(3) the advisory guideline range;

(4) any pertinent policy statements issued by the Sentencing Commission;

(5) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

The court should conduct a fulsome inquiry "largely unlimited" in scope and source to determine the appropriate sentence. *See United States v. Tucker*, 404 U.S. 443, 446-47 (1972). Indeed, 18 U.S.C. § 3661 provides that:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

These statutes reflect a clear Congressional directive: district courts should engage in a broad and holistic review of the defendant's conduct and character when imposing sentence.

### III. The Appropriate Sentence: 46 Months' Imprisonment

Each of the Section 3553(a) factors counsels in favor of a substantial imprisonment term for this defendant.

#### A. The nature and circumstances of the offense

Over the course of years, the defendant purchased subsidiary law firms across the United States using his holding company, Plutos Sama. And at his direction, Plutos Sama pointedly refused to comply with its payroll tax obligations, to the tune of over $5,000,000 in total tax loss to the IRS. *See* PSR ¶ 21.

Tax crimes worth millions of dollars represent grave misconduct, standing alone.

4

And the circumstances here reveal that the defendant went beyond those tax offenses. He hurt real people, by failing to tender wages on time; failing to make appropriate contributions to his employees' retirement accounts; and, most incredibly, failing to pay his employees' health insurance premiums—without giving them any notice that their coverage had lapsed—such that his employees went through serious medical procedures unaware they would ultimately be paying out-of-pocket for the same. *Id.* ¶ 15.

The defendant also attempted to conceal his crimes. He hired unqualified personnel to senior financial positions, so he could more easily direct their misconduct. *Id.* ¶ 16 (describing how both of defendant's controllers would do his bidding "without question"). He changed his company's payroll processor, so he could exercise more control over the company's funds. *Id.* ¶ 14. He lied, "all day long," to his creditors, his employees, and his investors. PSR Add. at *30.

And when things fell apart, the defendant lied more, under oath, in bankruptcy proceedings. To be specific: in March 2019, during a Section 341 "Meeting of Creditors" associated with the Plutos Sama entity, defendant had the following sworn exchange with Assistant United States Trustee Frank Cadigan, wherein defendant lied about transfers of Plutos Sama assets to him and attempted to deflect blame to his accounting personnel:

> Cadigan: Have any assets of Plutos Sama or its subsidiaries been transferred to corporate or personal accounts controlled by Matthew Browndorf while they were still outstanding payments due to either the pension or health plans or their service providers?
>
> Defendant: Uh. I would have no idea what the outstanding payments would be. Um. I did not instruct transfers other than my normal compensation, which was administered by the accounting department. Um. So I'm..I'm really…that's about…about as best as I can answer. Again, I am…eh…two arms tied behind my back without the legacy accounting staff. So, a lot of this we are still trying to figure out.

*In re LF Runoff 2, LLC*, 8:19-bk-10526, Dkt. No. [23] (C.D. Ca. March 5, 2019).

The defendant's crimes were motivated by greed, not need. He took money from Plutos Sama and its subsidiaries—money that should have gone to his employees' retirement accounts and insurance premiums—to pay his mortgages and credit card expenses. *See* PSR ¶ 20. And with those ill-gotten gains, the defendant and his former spouse enjoyed sports cars; private flights; club memberships; and luxurious vacations. *Id.* Select photographs reflective of defendant's profligate spending, taken from his ex-wife's social media, follow below:









At bottom: this defendant, to fund his own lavish lifestyle, stole millions—from the government and his employees—over the course of years, and he lied about it. His crime was extremely aggravated, and the Court's sentence should reflect that seriousness.

B. **The history and characteristics of the defendant**

The defendant knew better. He is a lawyer by training and education, having graduated with honors and served on his alma mater's law review. *See* PSR ¶ 95. He also practiced law for over twenty years, including approximately five years litigating at Bryan Cave, a national law firm with a fine reputation. *Id.* ¶¶ 98-100.

The defendant did not need the money. He was a commercial litigator for around eight years, earning a six-figure salary; he made substantial sums after transitioning from law to finance; and even today—with appointed counsel in both this case and the Maryland matter—he currently reports a net worth of over one million dollars, with annual income just over $81,000. *Id.* ¶¶ 98-100, 105.

The defendant had a strong support network. He had loving parents. *Id.* ¶¶ 60-61. He was raised in a stable home. *Id.* And he has three children, a sister with whom he is close, and a serious girlfriend. *Id.* ¶¶ 59, 67-70.

In short: the defendant enjoyed varied and substantial advantages not shared by many defendants who come before this Court—and he committed these crimes anyway.

Even more incredibly, defendant's malfeasance continued even after he faced two separate federal indictments. While on pretrial release in this Court and in the District of Maryland, he has regularly used marijuana. *Id.* ¶ 89. He has lied on a rental application. *Id.* ¶ 5. And he has stolen goods worth thousands of dollars. *Id.* ¶ 57.

The only thing that stopped the defendant from committing more crimes was judicial intervention, when a federal magistrate in Maryland detained him pending trial. The government's recommendation here is heavily informed by this evident need for incapacitation.

### C. The seriousness of the crimes and the need to provide just punishment

The defendant's crimes were incredibly serious. *See United States v. Veras*, No. 17-CR-158-JPS, 2020 WL 7344020, at *3 (E.D. Wis. Dec. 14, 2020) (observing that non-violent white collar crime can still be "dangerous to others," in the context of denying compassionate release to a defendant who had "defrauded the Government out of almost $3,000,000").

And this defendant presents the risk identified by the Court in *Veras*, per his victims.

One victim described how Plutos Sama never formally told its employees they no longer had health insurance; instead, employees found out when they "started running into issues when paying for medical bills." *See* PSR ¶ 24. In other words, employees were having surgeries, only to find out after the fact that they no longer had coverage. *Id.* Others, after realizing paychecks

8

Case 2:22-cr-00252-JPS   Filed 11/22/23   Page 8 of 12   Document 28

promised by the defendant were never coming, had to move in with relatives or borrow money from friends. *Id.*

Another victim noted that defendant's crimes engendered an "extreme level of depression and anxiety," along with significant credit card debt. *Id.* ¶ 25. This victim wondered how the defendant "can sleep at night knowing he ruined the lives financially, physically, and emotionally of those who are far less privileged than himself." *Id.*

Still another victim described the defendant as "conniving and manipulative." *Id.* ¶ 26. More specifically:

> What Matthew Browndorf did was a betrayal of innocent employees' trust. He lied to us; he got us to believe he had our best interest at heart, and continued to strig us along in order to . . . live his lavish lifestyle. He would brag about the parties he would host, and he would hold state of the union meetings in his fancy office with a literal suit of armor conveniently positioned near the fireplace to set the stage. All while we lived paycheck to paycheck and did what we could to make ends meet, believing that all would be made right and there would be future successes and opportunities.

*Id.*

A separate victim noted that due to defendant's "selfishness and greed," the defendant had "knowingly and willfully destroyed" BP Peterman, an established law firm. *Id.* ¶ 27. This same victim explained that the "stress and disruption" defendant caused "by mismanaging money and issuing worthless paychecks is unlike anything [the victim has] ever experienced." *Id.*

Finally, another victim was able to offer a more granular understanding of the defendant's character. Per this victim, the "defendant will do anything to obfuscate" and "to disassociate himself from his prior fraudulent and deceitful behavior." *Id.* ¶ 29. The defendant "can change the names of his companies as much as he wants, but he cannot avoid the fact that it is always his actions that are behind the deceit and fraud." *Id.* Given his own observations, this

9

victim believes defendant's "fraudulent actions are a pattern, one that will most likely re-occur." *Id.* The defendant "is extremely skilled at convincing people that he has sincerity, honesty, and integrity when, in fact, he possesses very little of any of those attributes. He is very persuasive and tells people what they want to hear although his actions and behavior prove to the contrary. In the end, the defendant's words mean nothing and cannot be trusted." *Id.*

### D. The advisory guidelines range

While the Sentencing Guidelines are no longer mandatory, they remain the "lodestar" of federal sentencing, "inform[ing] and instruct[ing] the district court's determination of an appropriate sentence." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016).

The government and the probation officer believe defendant has a total adjusted offense level of 23, with a criminal history category of I, yielding a Guideline range of 46-57 months' imprisonment.

Defendant objects to the imposition of a +2 leadership enhancement pursuant to USSG § 3B1.1(c), contending that because this enhancement requires at least one other "participant," and he "was the only 'participant' in the alleged criminal activity," as that term is defined in Application Note 1, this enhancement does not apply. *See generally* PSR Add.

He is mistaken.

To be sure, the Guidelines define a "participant" as a "person who is criminally responsible for the commission of the offense." App. Note 1. But that provision goes on to explain that to qualify as a "participant," a person "need not have been convicted." *Id.* And here, multiple Plutos Sama employees were criminal participants in Browndorf's crimes, even though the United States, after considering the totality of the circumstances here and defendant's domineering personality, decided not to seek charges against them.

10

For example: P.F., Plutos Sama's CFO, failed to file appropriate tax forms with the IRS, as required under the law, at defendant's direction. *See* PSR Add. at *25. M.S. and B.R., during their respective stints as Plutos Sama's controller, similarly failed to appropriately remit health insurance and 401(k) contributions, again at defendant's direction. *Id.* Browndorf also had B.R. "lie to people on a regular basis." *Id.*

Given the undisputed evidence regarding these other participants, defendant's objection should be overruled. The Court should adopt the probation officer's Guideline calculation and impose a sentence at the low-end of that "lodestar" range, given the nature of defendant's crimes.

E. **The need for specific and general deterrence**

The United States respectfully requests that the Court consider deterrence as a compelling sentencing factor in this case. "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity these crimes are 'prime candidate[s] for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir 2006) (cleaned up) Further, "as the legislative history of the adoption of § 3553 demonstrates, Congress viewed deterrence as particularly important in the area of white-collar crime." *Id.* (cleaned up).

These principles were reaffirmed in *United States v. Peppel*, 707 F.3d 627 (6th Cir. 2013). In *Peppel*, the court referenced the need to implement a meaningful custodial sentence in white collar cases, even when "it was undisputed at the time of sentencing that [a defendant's] past history was exemplary." *Id*. at 638; *see also United States v. Warner*, 792 F.3d 847, 860 (7th Cir. 2015) (noting that general deterrence is an important goal of sentencing for white collar defendants "because they (presumably) act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity").

Given this reality, and the labor associated with investigating and prosecuting white collar crime, there is no doubt that "effective deterrence of tax crimes requires a credible threat of imprisonment." *Warner*, 792 F.3d at 861.

This defendant's case is no different. His crimes were not offenses of passion or opportunity. His misconduct was premeditated, and he took substantial steps to avoid detection. His crimes continued for years and involved the use of subordinates. Given that evidence, it is important that his sentence reflect both the need for specific and general deterrence.

## IV. Conclusion

Defendant's crimes were serious, and he continued to commit new law violations into the teeth of two federal indictments. He was an affluent lawyer who victimized his less fortunate employees simply because he wanted more. And he has already lied under oath about what happened here.

Consistent with the terms of the plea agreement, the United States respectfully requests that the Court sentence the defendant to a total of 46 months' imprisonment.

Dated at Milwaukee, Wisconsin, this 22th day of November, 2023.

Respectfully submitted,

Gregory J. Haanstad
United States Attorney

By: /s Kevin Knight

Kevin C. Knight
United States Attorney's Office
517 E. Wisconsin Ave - Rm 530
Milwaukee, WI 53202
Phone: 414.297.1700

12