UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 22-CR-252 |
| ) | |
| v. ) | Milwaukee, WI |
| ) | |
| MATTHEW BROWNDORF, ) | November 30,2023 |
| ) | 10:00 a.m. |
| Defendant. ) | |

_____

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE J. P. STADTMUELLER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff
UNITED STATES OF AMERICA:        United States Dept. of Justice
                                 (ED-WI)
                                 By:  MR. KEVIN C. KNIGHT
                                 Office of the US Attorney
                                 517 E. Wisconsin Ave, Rm. 530
                                 Milwaukee, WI  53202
                                 Ph:  414-297-1775
                                 kevin.knight@usdoj.gov


For the Defendant
MATTHEW BROWNDORF:               Kravit Hovel & Krawczyk, SC
(Present)                        By:  MR. BRIAN T. FAHL
                                 825 N. Jefferson St.
                                 Milwaukee, WI  53202
                                 Ph:  414-271-7100
                                 btf@kravitlaw.com


ALSO PRESENT:                    NICOLE FORD, US Probation;

                                 ZACH STEGENGA, IRS Criminal
                                           Investigator; and

                                 DAVID LARSON, Department of
                                       Labor Senior Investigator.


U.S. Official Court Reporter:  JENNIFER L. STAKE, RDR, CRR
Proceedings recorded by computerized stenography, transcript
produced by computer-aided transcription.

1          TRANSCRIPT OF PROCEEDINGS

2               THE CLERK:  The Court calls United States of America

3      versus Matthew Browndorf, Case No. 22-CR-252, for a sentencing

4      hearing.  May I have the appearances beginning with the

5      Government.

6               MR. KNIGHT:  Good morning, your Honor.  Kevin Knight

7      appears on behalf of the United States.  With me this morning

8      are IRS Criminal Investigator Zach Stegenga and Department of

9      Labor Senior Investigator David Larson.

10              MS. FORD:  Good morning, your Honor.  Nicole Ford for

11     probation and pretrial services.

12              MR. FAHL:  Good morning, your Honor.  Attorney Brian

13     Fahl appears for Matthew Browndorf, who appears today in

14     custody.

15              THE COURT:  Thank you.  Good morning, Mr. Knight.  And

16     good morning to the case agents.  And good morning to you,

17     Ms. Ford.  Good morning to you, Mr. Fahl.  And good morning to

18     you, Mr. Browndorf.

19          Matthew Browndorf, back on July 13th of this year, you

20     entered a plea of guilty and were later formally adjudicated

21     guilty of the conduct charged in Count 9 of the underlying

22     indictment, namely willful failure to collect and pay over

23     federal taxes in violation of Title 26 of the US Code, Section

24     7202.

25          We have now reached that stage of these proceedings where

1    it becomes the duty of the Court to address several questions

2    to both you and counsel.  First of all, Mr. Browndorf, have you

3    had a sufficient opportunity to review both the revised

4    presentence report in your case, as well as the addendum to

5    that report, both of which bear the date of November 21st of

6    this year?

7            THE DEFENDANT:  I have, your Honor.

8            THE COURT:  Thank you.

9        Likewise, Mr. Fahl, have you had an opportunity to review

10   those documents?

11           MR. FAHL:  Yes, your Honor.

12           THE COURT:  And are there any facts detailed in the

13   numbered paragraphs of that report and addendum to which either

14   you or your client take issue with or otherwise seek further

15   clarification on?

16           MR. FAHL:  There are a couple things, your Honor.

17   First, I want to note that the defendant's proposed restitution

18   plan, I included the two properties listed in Paragraph 105 of

19   the PSR as possible sources to draw equity from for the purpose

20   of restitution.  Those are 5 Williamson Lane in New Jersey and

21   27 Kaxs Way in New York.

22       It has come to my attention that both of these properties

23   are subject to litigation, also currently encumbered by

24   mortgages and liens.  However, my client believes that despite

25   this, both properties should have enough equity to make them

1    sources for restitution and that the legal issues surrounding

2    both properties will be resolved favorably.  So I wanted to

3    make that clarification.  That is something that's new to me

4    related to Paragraph 105 and as I use those properties in my

5    argument.

6        Additionally, there are, I guess, two things in the PSR not

7    that we object to, but I want to put some clarification to.

8    The first is in Paragraph 5, they discuss the information

9    related to the findings of the detention hearing in Maryland in

10   a related case and allegations.

11       Those, Mr. Browndorf's Maryland lawyers dispute the

12   findings by the magistrate judge in that case and plan on

13   challenging those findings when Mr. Browndorf returns to

14   Maryland.  So we don't dispute that the findings were there and

15   that Mr. Browndorf was revoked.  But to the extent that the

16   underlying facts, we don't believe that those should be relied

17   on by the Court because they haven't been fully determined yet.

18       Additionally, in Paragraph 57, there is notes of

19   allegations of furniture theft in California.  That issue also

20   has not completely been resolved.  The furniture issue is a

21   longstanding civil issue between Mr. Browndorf and Mr. Ma, and

22   no action has been taken by the criminal authorities in

23   California.  And, again, that's still in a civil negotiations.

24   So to -- while we don't dispute that the facts in there are

25   true, we just want to note for the record that that hasn't been

1    resolved and that there is no criminal charges as of yet.

2              THE COURT:  All right.  Thank you.

3        Mr. Knight, have you had an opportunity to review the

4    revised presentence report and the addendum?

5              MR. KNIGHT:  Yes, your Honor.

6              THE COURT:  And does the Government have any objection

7    either as to the facts or the information addressed in those

8    paragraphs or otherwise seek clarification?

9              MR. KNIGHT:  No, your Honor.  Thank you.

10             THE COURT:  Very well.  Mr. Fahl, Mr. Knight, and

11   Ms. Ford, there is an area that does need further explication

12   and clarification.  And that is the matter of Mr. Browndorf's

13   status with the licensing authorities whether in New Jersey,

14   New York, Pennsylvania, or California.  There is a reference in

15   Paragraph No. 104 to a license in apparently Pennsylvania.  But

16   there's also reference to Mr. Browndorf having been suspended

17   from the practice of law at least in one court in Pennsylvania.

18       So we need to get all of this nailed down where he was

19   licensed, when he was licensed, and the current status of his

20   professional licensure, whether as a lawyer, whether as a

21   financial consultant in any of these states or the State of

22   California.  And once that's been identified, whether it's Mr.

23   Knight or Mr. Fahl or your office, I want you to forward

24   certified mail return receipt requested to each licensing

25   authority the certified judgment of conviction in this case

1    that will follow today's sentencing.

2        This case has all the earmarks, particularly in a

3    multi-state scenario, of falling through the cracks.  And in

4    order to preclude anything close to that happening, the

5    judgment in this case needs to get to virtually every licensing

6    authority with whom Mr. Browndorf has had a professional

7    license issued.  Do you understand?

8            MS. FORD:  Yes, your Honor.

9            THE COURT:  Mr. Knight, do you understand?

10           MR. KNIGHT:  Yes, your Honor.  We'll do that.

11           THE COURT:  Mr. Fahl?

12           MR. FAHL:  Yes, your Honor.  And I will note that it

13   was Mr. Browndorf's intention at the conclusion of today's

14   hearing to surrender his legal licenses in all states.

15           THE COURT:  Well, that need will be addressed in the

16   revised presentence report.  This is not the first case that

17   Judge Stadtmueller has had involving lawyers involved in

18   criminal conduct.  And, sadly, it will probably not be the

19   last.  But any time there's a licensure, whether it's teachers

20   involved with child pornography, financial advisors, real

21   estate agents, any licensure, it needs to get to those

22   licensing authorities.  It's for them to decide what action, if

23   any.  But until and unless they have the facts, they have no

24   basis to even conduct an inquiry.  And that's exactly what

25   happens in a case like this where there is no licensure in the

1    State of Wisconsin that the presentence report addresses.  And

2    if there is, that needs to be captured and included in the

3    revised presentence report.

4        And to your involvement, Mr. Knight, this is something

5    whether it's the FBI or IRS ought to include in every

6    investigation; because, sadly, it's cases like this, as the

7    Court noted earlier, that literally drop through the cracks

8    because nobody brings it to the attention of the licensing

9    authorities.  And it's for them to decide how they would like

10   to treat it.  I'm not making any recommendation.  I'm requiring

11   that the judgment of conviction be sent to them.

12             MR. KNIGHT:  Yes, your Honor.  We'll take that to

13   heart, and I'll note anecdotally I have two lawyers coming

14   before the Court in the coming weeks.  And I'll make sure

15   that's clarified before those sentencings, as well, your Honor.

16             THE COURT:  So subject to those facts being included

17   in a revised presentence report following this hearing and

18   subject to Mr. Fahl's comments with respect to certain

19   properties and liens and foreclosures being more fully

20   explicated in the of latest iteration of the presentence

21   report, the Court does herewith adopt all of the facts.

22       There is the additional matter that, Mr. Knight, you

23   brought to the Court's attention in a video format the victim's

24   statements.  And because they are now all identified, we need

25   clarification as to -- as to whether these three late-filed

1    victims' comments are an expansion of any of the victims who

2    are anonymously reported in Paragraphs 24 through 29 of the

3    revised presentence report.  If Ms. Harris and Mr. Felknor and

4    Melissa are new, their statements need to be transcribed and

5    included in the written version of the revised presentence

6    report.

7            MR. KNIGHT:  Yes, your Honor.  They are new

8    statements, not redundant of the written ones.  And we can work

9    with the probation office to include them in the revised

10   version.

11           THE COURT:  Very well.

12       Now, as to the advisory sentencing guidelines, the Court

13   has been presented with a metric completed by the probation

14   department.  It includes a total offense level of 23, criminal

15   history category Roman numeral I, which in combination with the

16   offense level carries a guideline term of imprisonment of 46 to

17   57 months.  Any term of imprisonment to be followed by a term

18   of at least one but not more than three years of supervised

19   release, $831,260.06 in restitution, a fine of not less than

20   $20,000 nor no more than $200,000, and finally a $100 special

21   assessment.

22       I understand where the Government and the probation

23   department came up with the restitution figures, that is, to

24   the Internal Revenue Service of $435,144.55 and the $396,115.51

25   to former employees.  And the concern that the Court has with

1    respect to restitution, particularly with respect to certain of

2    the victims in this case, some of whom have been kind enough to

3    submit statements to the probation department and the three

4    videos that the Court has received. But strikingly, the amount

5    of restitution does not strike the Court as coming anywhere

6    near what the losses of some of these victims have been,

7    including medical bills that are in the six figures. And that

8    doesn't address the fact that premiums weren't paid, the fact

9    that contributions were not made to 401(k) plans. It does not

10   cover Social Security that was ostensibly withheld, taxes

11   withheld. In fact, at one point in the California bankruptcy,

12   the Internal Revenue Service filed a claim of $1,550,000, yet

13   restitution here is less than a third of that amount.

14       So my question is to you, Mr. Knight and Ms. Ford, where

15   are -- is the reconciliation between what some of these victims

16   endured and the restitution figures that have been included in

17   the presentence report?

18           MR. KNIGHT: Yes, your Honor. So to take those in two

19   separate parts, with respect to the IRS figure, I think it's

20   worth noting and it has some relevance later, I think, as we

21   discuss the loss amount and what the appropriate sentence is,

22   it's true that the IRS submitted a claim of approximately

23   1.5 million in the bankruptcy proceeding. It's worth noting,

24   though, that that figure is not meant to be a precise

25   calculation. It's based on prior returns associated with the

1   given entity, and it's the IRS's best estimate at that time.

2       I think it's also worth noting that the restitution figure

3   is designed to capture -- as the Court knows, the offense of

4   conviction is a payroll tax offense. There's two components to

5   that. The restitution figure here is designed to account for

6   the former, the monies that were available to Mr. Browndorf and

7   were not tendered. There are also -- so that's the IRS number,

8   Judge.

9       The victims' number, I think as the Court saw in the PSR,

10  primarily it's been the responsibility of the Department of

11  Labor investigators who spent a very long time with this case,

12  they've sat with those records, and they have attempted to

13  determine almost down to the penny what the number that we can

14  cleanly ascribe to a victim's loss is with respect to Mr.

15  Browndorf's misconduct. I think the proof in the pudding of

16  that is the slightly revised figure.

17      The Court will recall that there's a number in the plea

18  agreement that is just over 401,000. The number that's now in

19  the PSR for the victims is around 390,000. That distinction is

20  a function of the hard work that the DOL put in to make sure

21  that we were down to the penny making sure that we were tying

22  money to Mr. Browndorf's misconduct.

23      And we wanted to make sure that there wasn't a dispute with

24  respect to that amount before we came to the Court. And that's

25  why that number was approved by all of the victims we could

1    identify.  None of them objected to it.  And it was the subject

2    of, obviously, an agreement with Mr. Browndorf.

3        So those figures were the subject of substantial internal

4    work.  They're the subject of an approval by the victims here.

5    And as I say, Judge, they represent a resolution that Mr.

6    Browndorf agreed to.  And for those reasons, Judge, we're

7    comfortable with those numbers.

8            THE COURT:  So you're telling me, without getting into

9    the detail, whether it's Mr. Felknor or Ms. Harris or Melissa,

10   who are the more recent victims, that whatever amounts they're

11   out that's already included in this $390,000 figure?

12           MR. KNIGHT:  Yes, Judge.  The Court will recall that

13   in the PSR, it's not included -- it's not addended to the PSR,

14   but the PSR notes that there is a spreadsheet that's been

15   submitted to the clerk's office that enumerates the losses

16   associated with each of the victims who we were able to

17   identify and quantify their loss and tie that loss to Mr.

18   Browndorf.  And we've been working diligently to do that math,

19   to alert our victims to Mr. Browndorf's misconduct, and to work

20   with them to make sure that they're comfortable with today's

21   resolution.  And we have received literally no objections to

22   that number.

23       Now, it's also worth noting -- and I appreciate Agent

24   Larson brings up to me -- those numbers, right, the victims'

25   numbers, are tied as a matter of law to the offense of

1  conviction here as well, right, so we have losses that are

2  quantified and associated with the BP Peterman law firm, right,

3  so we have other subsidiaries of the Plutos Sama holding

4  company that are not associated with the offenses of conviction

5  or even the offenses that were charged.  And that's the other,

6  I think -- I think Agent Larson makes a good point that that's

7  probably an animating factor in the discrepancy that the

8  Court's appreciating at first glance.

9          THE COURT:  Well, that brings to mind another

10  question; and that is, in terms of giving due recognition to

11  the rights of victims, why weren't all of these cases charged

12  where there are victims in separate counts and we try the case?

13          MR. KNIGHT:  Judge, I think our victims here were well

14  served by the resolution that we offered.  We think that, you

15  know, Mr. Browndorf is facing a term of imprisonment of years.

16  We think that's meaningful.  We thought it was meaningful to

17  bring this case to a resolution and give them a definitive

18  conclusion to this -- to this problem and this chapter of their

19  lives.  I think as the Court saw, some of these victims are

20  deeply traumatized by what Mr. Browndorf did to them, and we --

21          THE COURT:  Absolutely no question.  I've been a judge

22  for 36 and a half years, sentenced just under 2,500 defendants.

23  And other than crimes of violence, when it comes to white-

24  collar crime cases, there are a couple that involve lawyers,

25  but their only victims happen to be either their employer or a

1    single client.  This case, the traumatization captured in just

2    the information appearing in Paragraphs 27 through 29 coupled

3    with the three videos is enough to make a seasoned trial judge

4    cry.  That's how traumatizing this whole episode in Mr.

5    Browndorf's life has so affected individuals.  And I appreciate

6    many of them were far, far away from Irvine, California, but

7    nonetheless, deeply, deeply traumatized, no mistake about it.

8         MR. KNIGHT:  And just to put a coda on that, Judge, I

9    think that that trauma, that very real trauma that the Court so

10   eloquently described animated our desire to bring this thing to

11   a conclusion, to give these people closure, to not put them

12   through the -- the burden of a trial, the uncertainty of a

13   trial, the possibility of cross-examination.  You know, those

14   were things that we were anxious to avoid for the people that

15   Mr. Browndorf had already hurt so deeply.

16        THE COURT:  Very well.  To continue on, the guideline

17   is a fine of not less than $20,000 nor no more than $200,000

18   and, finally, a $100 special assessment.

19        Mr. Fahl, as our beginning point, particularly against the

20   backdrop of the November 21st addendum to the presentence

21   report in which you interposed objections with respect to the

22   matter of how many individuals were involved and the

23   Government's response and the probation department's analysis,

24   do you and your client accept the guideline metric that is

25   before the Court?

1      MR. FAHL:  Your Honor, we will still stand on the

2  objection.  We think that the two-level increase is not

3  appropriate.  That is based on what's been submitted in the

4  response to the presentence report and, also, in my sentencing

5  memorandum.

6      THE COURT:  Very well.  You've made your record.  Mr.

7  Knight has made his, and Ms. Ford's office has made theirs.

8  And the Court is constrained to adopt the probation

9  department's computations based upon their review and analysis

10  of US Sentencing Guideline 3B1.1(c), in particular the

11  Application Note 2 which to pick up on a comment that the Court

12  made earlier about Mr. Browndorf being an absent manager with

13  respect to what occurred here in Wisconsin, nonetheless, he had

14  more than a thumb on the pulse of the business entity and

15  virtually directed not only what employees did, whether

16  wittingly or unwittingly -- and that comment refers to the

17  employees, not Mr. Browndorf -- compared and contrasted with

18  the numerous instances of withdrawing funds for his own

19  personal benefit more than amply meets what both the Sentencing

20  Commission had in mind and Congress in adopting US Sentencing

21  Guideline 3B1.1(c).  And accordingly, the objection to that

22  enhancement is overruled.

23   Are there any other guideline issues, Mr. Fahl, that the

24  Court need address?

25      MR. FAHL:  No, your Honor.

1      THE COURT:  Very well.  That leaves us with the

2  initial guideline construct, that is, a total offense level of

3  23, criminal history category Roman numeral I, which in

4  combination with the offense level carries a guideline term of

5  imprisonment of 46 to 57 months, any term of imprisonment to be

6  followed by a term of at least one but not more than three

7  years of supervised release, $831,260.06 in restitution, a fine

8  of not less than $20,000, nor no more than $200,000, and,

9  finally, a $100 special assessment.

10     Having made those determinations, Mr. Fahl, do you or your

11  client have any reason to advance this morning as to why the

12  Court ought not proceed today with the imposition of a sentence

13  in this case?

14      MR. FAHL:  No, your Honor.

15      THE COURT:  Beyond your sentencing memo of November

16  22nd that is Docket No. 27 and your letter filed with the Court

17  yesterday, Docket No. 30, to the extent that you or Mr.

18  Browndorf have some of comments you'd like to make, I'll give

19  you and your client an opportunity as well as Mr. Knight and

20  any victims who may actually be here in the courtroom today.

21      MR. FAHL:  Thank you, your Honor.  I do have some

22  comments, and Mr. Browndorf would like to exercise his right of

23  allocution.

24     You know, understanding your court -- the Court's comments

25  about the victims and what they suffered, Mr. Browndorf

1    understands that.  And we hope we've expressed how terrible he

2    feels about that and what he really wants to do is have an

3    opportunity to pay them back, to pay this back -- this money

4    back as quickly as possible and do whatever he can, although

5    maybe never make them whole, at least get them back some of the

6    money that they've lost as a result of Mr. Browndorf's conduct.

7         And I think restitution was a centerpiece of the agreement

8    between the parties.  It was a centerpiece of the plea

9    agreement that this Court accepted.  And so what we proposed in

10   our sentencing memorandum is some term of probation with as

11   much home confinement as needed, but allowing Mr. Browndorf the

12   time to work.  You know, he may have -- he has a job available

13   to him, if he were released.  He would have the ability to work

14   on the House of Browndorf television show which, if picked up,

15   has the ability in itself to make the restitution victims

16   whole.  And, again, to the extent that there is any equity in

17   the properties that he can take out, he would want the ability

18   to do that so that he could get these victims paid as quickly

19   as possible.

20        And I have think the restitution proposal has, you know,

21   sufficient benchmarks that if he doesn't meet those restitution

22   obligations -- and we have a 20 percent of whatever his salary

23   is and essentially the full payment to the -- to the employee

24   victims within two years, that if those are not met or at any

25   point any of those are not met, this Court can then impose

1    whatever sentence it feels is reasonable.  But the proposal we

2    have, we think, is the best opportunity for these victims to

3    actually get some money back.  A long sentence of incarceration

4    may take Mr. Browndorf's ability to make full restitution,

5    while he would still do everything he can to do so, some of the

6    tools at his possession may no longer be there after a lengthy

7    period of incarceration.  So really what we're asking for is

8    that he have the opportunity to give some comfort to these

9    victims by paying restitution.

10          Mr. Browndorf will then exercise his right of allocution.

11              THE DEFENDANT:  Thank you.

12       To the Court and the victims in this case, I am filled with

13   humility and shame as I read the victims' statements in this

14   case.  I was devastated when I read their stories knowing that

15   I was the cause of their pain.  Although I have my flaws, and

16   there may be many, I never wanted to hurt anyone.  I am a good

17   person, and I have always tried to be.  I try my best to follow

18   God's teachings, and I have spent much time in prayer and

19   thought about where I went wrong.

20       I wish I would have slowed down and focused on building a

21   more stable foundation around BP Peterman, instead of rushing

22   off to purchase the next commodity or chase the next deal.  I

23   wish I delivered -- or deliberated earlier and slowed spending

24   earlier.  I wish I could go back and do it over.  I would do

25   everything differently.  BP Peterman might still have gone

1    down, but the IRS and the individual victims would have --

2    would not have been harmed.

3        My actions have led to so much pain and sorrow for

4    employees.  And for this, I am deeply sorrowful and seek to

5    redress my wrongs with restitution and to ask the forgiveness

6    of those I've hurt.

7        For what it's worth, I am a lawyer, and I have so much

8    reverence for this Court.  It brings me to my knees to be

9    standing before this -- your Honor as a defendant.  And I have

10    come at the mercy of the scales of justice.  I never thought I

11    would be in this position.  Whatever sentence the Court

12    imposes, I will do my best to put this case behind me and to

13    move forward in a positive direction.  While I want to work and

14    be with my son and make restitution, I understand that there

15    needs to be a day of reckoning for those that I have harmed.

16        I hope this Court will allow me the opportunity to prove

17    restitution in the quickest form and not make me wait through

18    incarceration, as I deeply desire to do that.  And if I could

19    make the victims whole, I would do that now.  As much as I like

20    to, I can't undo what I've done.  But it is my deepest hope

21    that can I repair what I've done.  With grace.  Thank you, your

22    Honor.

23        THE COURT:  Thank you, Mr. Browndorf.

24    Mr. Knight.

25        MR. KNIGHT:  Thank you, your Honor.  This defendant is

1    an incorrigible fraudster who only stopped committing crimes
2    when he was detained.  And his crimes are serious.  He
3    defrauded the IRS to the tune of over $5 million in tax loss.
4    As the Court's already noted, he cheated his employees in such
5    a fashion that some of their lives were forever changed.

6        He stole from them, and he used that money to buy private
7    flights, club memberships, sports cars.  These were the things
8    that he privileged over the people that worked for him.

9        Given the seriousness of those offenses, given the need for
10   general deterrence here, given his demonstrated refusal to
11   comply with the law into the teeth of two different pending
12   federal indictments, this Court should sentence him 46 months
13   imprisonment.

14       While the comments from defense counsel and the allocution
15   are still fresh, I want to address those first.  We heard Mr.
16   Fahl talk about how the Court should sentence Mr. Browndorf
17   such that he has an opportunity to make restitution.  I think
18   it's worth noting the shifting sands that this Court has
19   encountered with respect to Mr. Browndorf's willingness and
20   ability to pay restitution.

21       In his conversation with the probation office commemorated
22   in the presentence investigation report and in defendant's
23   sentencing memorandum, defendant represented that he had access
24   to assets in excess of $1 million.  That is false.  As Mr. Fahl
25   noted, the properties that Mr. Browndorf cited with respect to

1   those assets are encumbered by foreclosure complaint, liens,

2   and one is the subject of a default judgment in the bankruptcy

3   proceeding.

4       If Mr. Browndorf wanted to make his victims whole, he had

5   ample opportunity.  He chose not to do so.  That choice should

6   inform the Court's sentence.  And the idea that somehow he's

7   going to make the money back now is fanciful.

8       The letter that was submitted to the Court at Docket Entry

9   30 is an unbelievable fabrication.  This letter features

10  various syntax errors that reveal it to be not authentic.

11  Perhaps the most obvious indication of its falsity is the last

12  sentence.  I know the Court has it.  But the last sentence

13  provides:  We are hopeful that Matthew is able to arrange some

14  form of release condition sufficient to ensure his ability to

15  film on location, and we look forward to working with everyone

16  associated with House of Browndorf, including Jayden.

17      Jayden Browndorf is in custody in the State of California

18  for murder.  This letter is not authentic.  There is no chance

19  that if this Court releases Mr. Browndorf he is going to make

20  anywhere close to the amount of money that is reflected in

21  Docket Entry 30.  That is a fabrication, and the Court should

22  not consider it as it imposes sentence.

23      It's also worth noting that during his allocution the

24  defendant initially described himself as being filled with

25  humility.  That is, respectfully, inconsistent with someone who

1  is attempting to generate a television show that bears his last

2  name.  You don't go around making a show called The House of

3  Browndorf if you are filled with humility based on the crimes

4  that you've committed.

5      We also heard the defendant say that he is a good person

6  and he always tried to be.  The record shows that that's

7  obviously not true.  We heard the defendant say if he could do

8  it all over again, he would slow down and deliberate.  It does

9  not take a lawyer very long to deliberate when presented with

10  the question:  Should I steal my employees' money and buy

11  myself a private flight to the Bahamas?  The answer to that

12  question is no.  And it doesn't take someone to slow down and

13  think about it to come to that conclusion.

14      Judge, as we said in our memo, every single one of the

15  3553(a) factors cuts in favor of a substantial sentence here.

16  The nature and circumstances, as the Court alluded to,

17  incredibly aggravated.  Over the course of years, Mr. Browndorf

18  stole from the less sophisticated and stole from the IRS to

19  fund a lifestyle he could not otherwise afford.  But that's not

20  to say he didn't have access to money.  Mr. Browndorf was

21  affluent.  Mr. Browndorf made over six figures practicing law.

22  Mr. Browndorf had other successful ventures.  His crimes were

23  motivated by greed not need.

24      His crimes were also aggravated insofar as he took

25  substantial steps to conceal his misconduct.  He hired

1    unqualified personnel at his firm so that he could bully them

2    and convince them to lie on his behalf.  He changed his

3    company's payroll processors so that he might more granularly

4    exercise control over its funds.  And when things fell apart,

5    he lied to the bankruptcy trustee as commemorated in our

6    memorandum.

7        The seriousness of these offenses counsels in favor of

8    years of imprisonment.  The Court already acknowledged it.

9    These victims were hurt seriously.  I won't restate everything

10   they said, but I wanted to highlight one particular victim's

11   comment in the PSR.  That victim described how Mr. Browndorf's

12   misconduct is a pattern.  He is somebody who is extremely

13   skilled at convincing people that he has sincerity, honesty,

14   and integrity when, in fact, he possesses very little of any of

15   those attributes.

16       That's what we saw here today, Judge.  We saw an allocution

17   from a lawyer who knows what the Court wants to hear.  He is

18   trying to escape responsibility yet again with bogus letters at

19   Docket Entry 30, with misstatements about his assets.  And the

20   Court should not let him get away with it.

21       We made the point in our memo, so I won't belabor it; but,

22   Judge, this case cries out for a sentence that advances general

23   deterrence.  Mr. Browndorf is a sophisticated, rational

24   operator.  He committed these crimes out of greed not need

25   because he felt like it was rational to do so.  He did it

1   because he calculated that the juice was worth the squeeze.

2   Future defendants like Matt Browndorf should know that if they

3   try to do something like that in Wisconsin, their math is off.

4   They need to know that the punishment is going to make the

5   crime not worth it, and it falls to the Court to impose a

6   sentence along those lines.

7       Judge, at the end of the day, this defendant with just his

8   tax crimes would qualify for a sentence of years of

9   imprisonment.  $5 million of tax loss is nothing to sneeze at.

10  But the problems here ran so much deeper, and the hurt, as the

11  Court acknowledged, was so much more severe.  This defendant

12  lied, and he hurt people.  And when he was caught, he continued

13  to lie and hurt people.

14      This Court has recognized previously that white-collar

15  criminals are dangerous, particularly those sophisticated

16  white-collar criminals who prey on those who are not as

17  sophisticated as themselves.  And in those situations, the

18  Court has previously answered the call and incapacitated them

19  and protected those people that these sophisticated white-

20  collar criminals would prey on.  And it falls to the Court to

21  protect the public from Matt Browndorf.  Respectfully, the

22  Government requests a sentence of 46 months imprisonment.

23  Subject to your Honor's questions.

24          THE COURT:  All right.  Thank you.

25      Mr. Fahl, anything more you'd like to add?

1          MR. FAHL:  Sure.  Judge, I would just respond to a

2    couple things that Attorney Knight said.  Regarding Docket No.

3    30, I'll say it is what it is.  But I did -- I did talk to

4    Carole Joyce last night after I received the letter.  So I

5    don't know anything about her company.  But to the extent that

6    she's -- she's a real person.  She's on IMDb.  She apparently

7    does work in the entertainment industry.  So I don't know the

8    nature of her business, but she did indicate that it is her

9    intention to move forward with the show, if available.

10        Additionally, Mr. Knight mentioned that he didn't, you

11   know, use any of these properties or the funds to pay victims

12   now.  I will just note that as part of his conditions of

13   pretrial release, he was not allowed to do -- make any -- take

14   any loans or take any encumbrances.  So even if he would have

15   liked -- he would have liked to, he wouldn't have been allowed

16   to based on his conditions of pretrial release.  But those two

17   points for clarification.  Other than that, nothing, your

18   Honor.

19        THE COURT:  All right.  Thank you.

20        The Court staff circulated a series of 17 conditions of

21   supervised release, Mr. Fahl and Mr. Knight.  I appreciate, Mr.

22   Fahl, you had suggested something different with respect to

23   restitution.  Obviously, what is proposed by the Court does not

24   cabin Mr. Browndorf to $200 a month.  If he's able to pay more,

25   certainly there's no impediment to doing so.

1          Do you have any comment on the conditions?

2          MR. FAHL:  No, your Honor, other than to the extent

3   that Paragraph 16, if Mr. Browndorf has the ability to take a

4   loan and to meet his restitution obligations that he be allowed

5   to do that and not be foreclosed by Paragraph 16.

6          THE COURT:  Well, that approval will come because he

7   will seek and obviously obtain approval of his supervising

8   probation officer.  That's not an outright prohibition.  It

9   requires the approval.  And, obviously, the probation

10  department deals with restitution on an almost everyday basis.

11  So there's no impediment in Paragraph 16 to disposing property

12  along the lines of satisfying court obligations.

13      So your objection is noted, if it be considered an

14  objection, but overruled.

15          MR. FAHL:  Otherwise no other objections, your Honor.

16          THE COURT:  Thank you.

17      Any concerns, Mr. Knight?

18          MR. KNIGHT:  Not a particularly acute concern, Judge.

19  I just note obviously Condition 4 precludes Mr. Browndorf from

20  illegally possessing or using any controlled substance.

21  Probation office's report enumerates that Mr. Browndorf has

22  been regularly using marijuana.  I wonder if the Court could

23  clarify for Mr. Browndorf whether marijuana is encompassed

24  within Condition 4.

25          THE COURT:  Well, first of all, there's a distinction

1    between recreational use and medical use.  And there's also a

2    distinction depending on what jurisdiction he's released to.

3    These are all matters that are going to have to be refined down

4    the road.  The Court is not going to cast itself this morning

5    as being so clairvoyant as to predict any particular set of

6    circumstances with respect to any of the conditions because as

7    the Seventh Circuit Court of Appeals has repeatedly advised us

8    as trial judges over the last seven or eight years -- and this

9    is addressed in the last paragraph of the conditions -- that

10   any modification of the conditions are best left for further

11   consideration at such time as the defendant may become eligible

12   for release from the custodial portion of the Court's sentence.

13          MR. KNIGHT:  Thank you, your Honor.

14          THE COURT:  Well, Mr. Browndorf, I well appreciate the

15   fact that this morning is the first time that you and I have

16   seen one another.  But I also want you to know that I spent a

17   lot of time, as I do in each case, reviewing the presentence

18   report as well as the sentencing memos, the victim statements,

19   the plea agreement.  There's nothing that the Court has not

20   taken the time to review.  And as late as 5:30 this morning

21   when I got here, I reviewed the video excerpts of the three

22   latest victims.

23       And so I think I have at hand all of the relevant facts and

24   circumstances that pertain to your case because as a former

25   prosecutor and as a judge for more than 36 years, I take the

1   time to be sure that each offender has an opportunity, whether

2   in the presentence process or at oral allocution at sentencing,

3   to provide whatever information he or she deems appropriate

4   that the Court take into account.

5       And I appreciate although there is another federal case

6   pending, other than perhaps appearing in court in connection

7   with civil matters, this is your first appearance, other than

8   at the Rule 11 colloquy before the magistrate to learn

9   firsthand exactly what occurs in a formal sentencing hearing.

10      But you should understand a couple of very important

11  considerations. First of all, Congress put in place the

12  guideline construct for sentencing as a result of the

13  Sentencing Reform Act of 1984, which became applicable to

14  conduct occurring on or after November 1st of 1987.

15      And when these guidelines were first promulgated, they were

16  mandatory. In other words, the Court had no discretion in

17  terms of fashioning an appropriate sentence in any case.

18  However, as a result of the *Booker* decision, now some close to

19  15 years ago, the Supreme Court stepped in and cast the

20  guidelines in a role of being advisory to the Court.

21      But they did not vitiate or strike from the sentencing

22  regimen those two core principles that underlie the Sentencing

23  Reform Act of 1984. And those two core principles are

24  uniformity and proportionality in sentencing. And the reason

25  that those two benchmarks remain is that as a result of the

1   hearings that Congress conducted in adopting the guideline

2   approach to sentencing in our federal courts was to ensure that

3   whether it's Judge Stadtmueller in Milwaukee or Judge Jones in

4   Dallas or Judge Martinez in Miami, that we at least have some

5   common ground with respect to those matters that ought to go

6   into the sentencing judge's calculation, and no better way to

7   start that process than through a set of guidelines.

8        And although they are advisory in nature, they are and

9   continue to be the beginning point to ensure that whatever

10  sentence the Court ultimately imposes meets the statutory

11  requirements of Title 18 Section 3553(a)(2), that is, a

12  sentence that is sufficient but not greater than necessary to

13  achieve the goals of sentencing.

14       And as part of the matrix of factors that the Court is

15  obliged to take into account, we begin with the matter of just

16  how serious the conduct is and that the sentence imposed by the

17  Court needs to strike a balance between the matter of what is

18  fair, just, and reasonable punishment, as well as a sentence

19  that at the end of the day not only serves as a deterrent to

20  the offender before the Court, but as a deterrent to others who

21  may find themselves similarly challenged along life's path to

22  become involved in the same or similar conduct.

23       And then there's the matter of promoting respect for the

24  law as an institution in our society.  And then ultimately,

25  there's the matter of just punishment.  And so when we take

1    into account the overarching considerations of proportionality

2    and uniformity and each of these competing sentencing factors,

3    we're drawn into the eye, the absolute eye, of the storm that

4    surrounds this case.

5        First of all, we begin with the fact that the offender

6    before the Court, while you may not have at the time of the

7    commission of these acts been acting as a lawyer, nonetheless,

8    you had the training and were reposed with the trust that

9    attends any professional, whether it's a lawyer, an accountant,

10   a medical professional, or whatever.

11       But it doesn't begin and end there because when you are the

12   titular head of any institution, there comes with that awesome

13   responsibility the matter of being reposed with a level of

14   trust, whether it's to the public, whether it's to your

15   employees, whether it's to your family, whether it's to the

16   business community, the list just goes on and on and on.

17       And it is quite apparent to this Court that for whatever

18   reason, all of those precepts or benchmarks that one ought to

19   keep in mind as we travel life's path were simply set aside in

20   favor of whatever you want to ascribe to it, greed, avarice,

21   the high life, being better than the next guy, all of the

22   above, because this is not a case in which the individual

23   offender was keeping money from the Internal Revenue Service or

24   401(k) plans or health insurance in order to keep the business

25   afloat.  The money went right to things that were important to

1    Matthew Browndorf, whether it's cars, travel, planes, social

2    level of involvement, property acquisition.  It just goes on

3    and on and on.

4        And I dare say in all seriousness this morning had you

5    thought for a New York minute about the fact of how devastating

6    this conduct would have been to any of the numerous victims,

7    many of which have been identified in the presentence report,

8    you would have run away from this conduct that is underlying

9    this case like a scalded dog in a farmyard.  But,

10   unfortunately, it didn't happen that way.

11       And while I take no pleasure, absolutely no pleasure, out

12   of having to send anyone to prison because it's very expensive,

13   it takes individual offenders away from their family, in this

14   case away from an opportunity, at least in the near term, to

15   begin making restitution.  But at the end of the day, Mr.

16   Browndorf, there is no such thing as a get out of jail free

17   card, whether it's cooperation, whether it's repaying victims

18   in the form of financial restitution, whatever.  Because to

19   impose a sentence along the lines suggested by Mr. Fahl -- and

20   I have every respect for his ability as a lawyer and his

21   advocacy skills -- it's just not in the cards in this case.

22       The combination of what occurred, the length of what is

23   involved, how devastating that it was to each of these victims

24   simply jumps off the page, literally jumps off the page to

25   require an appropriate, fair, just, and reasonable sentence.

1       Now, I want the record to be very clear I am not taking
2   into account what occurred with respect to the personal
3   property and furniture with respect to the rental property in
4   California, just like I'm not taking into account the fraud
5   charges that remain pending in the District of Maryland.  Those
6   are separate matters to be addressed in separate forums; and,
7   accordingly, the Court does not take either of those into
8   account in terms of imposing the sentence that remains to be
9   imposed in this case today.
10      There is ample, ample factual support for not only your
11  role in the offense as an organizer, but there's more than
12  ample support that it was directed at emboldening your own
13  personal wealth and financial resources.  But in order to
14  achieve that result, you had to rely on the activities and
15  contributions of others.  And although they may not have risen
16  to the level of being criminally culpable, the fact remains
17  that without their ability to respond to your beck and call,
18  none of what occurred in this case would have been possible.
19      Obviously, it required your ability to move funds in a
20  manner that no one other than yourself ultimately knew what was
21  going on.  But it doesn't end there because you relied on
22  others to carry it out.  Whether they acted wittingly or
23  unwittingly, the fact remains that they were an integral part
24  of these events and activities.
25      Again, striking this Court as being very significant in

1    terms of your educational background, your position of trust as
2    an employer, and a complete abrogation of those
3    responsibilities and duties attendant to your professional
4    calling.  Whether in the active practice of law or not, you had
5    the skill set to know better.  And you chose to look the other
6    way in favor of garnering wealth at the expense of your own
7    employees which is, at the end of the day as the Court said
8    earlier, enough to make a grown judge cry.

9        But the fact remains we can't put the genie back in the
10   bottle or set the hands on the clock of mother time back.  And
11   so at the end of the process, whether it's deterrence, whether
12   it's respect for the law as an institution, the matter of
13   fairness, and the matter of uniformity and proportionality
14   require a significant sentence.  And in this case, the
15   significant sentence is a sentence of 48 months custody of the
16   Bureau of Prisons to be followed by a three-year term of
17   supervised release subject to each of the 17 conditions that
18   the Court earlier circulated which as the Court earlier noted
19   do remain subject to further review at the time of your release
20   from the custodial portion of the Court's sentence.

21       With respect to the matter of suggesting a sentence of
22   probation, obviously it's simply not in the cards.  And
23   although Mr. Fahl, to his credit, has endeavored to try to
24   somehow make that happen, we can go back to the presentence
25   report, Page 28, Paragraph 96, in which you suggested to the

1   probation department that going all the way back to February of

2   2022, you were still expecting the not so insignificant sum of

3   not 20, 30, $40,000 a month or even $400,000 a year, but a

4   $100,000 a month.  But it's never been paid.  In fact, the

5   probation department never received any kind of documentation

6   that would support your being entitled to that sort of funding.

7       Indeed, on a clear day, the magistrate judge who assigned

8   CJA-appointed counsel to you probably would have been wiser to

9   defer ruling on that until the probation department had a

10  better understanding of exactly what your relationship was with

11  Real Talk in Newport Beach.  But there's still even in November

12  of this year any record to support that claim.  Whether it's

13  true or not, I make no finding.  But it certainly raises more

14  questions than it provides answers.

15      And I also appreciate the fact that you have CJA-appointed

16  counsel in Maryland.  I'm not quarreling with that.  But

17  there's a level of inconsistency throughout this that simply

18  does not pass what ordinary people would refer to as the smell

19  test.  And, unfortunately, there is so much that has been

20  addressed in the presentence report, that addresses simply the

21  count that you plead guilty to without regard to what's pending

22  in California or pending in Maryland to again underscore the

23  sentence that the Court will now formally impose.

24      Matthew Browndorf, on July 13th of this year, you entered a

25  plea of guilty and were later formally adjudicated guilty as to

1   the conduct charged in Count 9 of the underlying indictment

2   charging willful failure to collect and pay over federal tax

3   obligations in violation of Title 26 Section 7202.

4        The Court having asked the defendant why judgment should

5   not now be pronounced and pursuant to the Sentencing Reform Act

6   of 1984, it is the judgment of the Court that the defendant

7   Matthew Browndorf be committed to the custody of the Bureau of

8   Prisons to be imprisoned for a term of 48 months as to the

9   offense of conviction.

10       The Court further determines that in light of the large

11  restitution obligation that Mr. Browndorf is confronted with,

12  that he does not have the financial ability to pay any fine,

13  and accordingly waives any fine in this case.  However,

14  pursuant to the Mandatory Victims Restitution Act of 1996, he's

15  ordered to pay restitution in the aggregate amount of

16  $831,260.06.  That amount is broken down to be payable to his

17  former employees of Plutos Sama and related entities in the

18  amount of $396,115.51 and $435,144.55 to the Internal Revenue

19  Service.  Those amounts are to be disbursed to the Clerk of the

20  Court located in Room 362 of this building whereupon receipt

21  thereof, they will be disbursed to the appropriate victims.

22       Following release from the custodial portion of the Court's

23  sentence, Mr. Browndorf will be placed on supervised release

24  for a term of three years as to the offense of conviction,

25  subject to each of the 17 conditions that the Court earlier

1    circulated to which there were no objections or modifications

2    sought that were acceptable to the Court, including the

3    suggestion that Mr. Browndorf remit 20 percent of his income

4    for restitution.  As the Court noted, he's certainly free to

5    increase the floor amount that the Court has set.  But it will

6    be dependent on his earnings at the time of he being placed on

7    supervised release.

8        In accordance with the Mandatory Victims Restitution Act of

9    1996 as provided for in 18 USC Section 3013, Mr. Browndorf is

10   ordered to pay a special assessment of $100 as to the offense

11   of conviction.

12       In addition, pursuant to the terms of the plea agreement,

13   the conduct charged in Counts 1 through 8 and 10 and 11 will

14   stand dismissed.

15       Finally, the Court neglected to note that with respect to

16   restitution, any interest on the restitution will be waived.

17       Mr. Fahl, if you have any recommendation as to a general or

18   specific place of confinement, I'll be happy to include it in

19   the judgment and commitment order, recognizing that ultimately

20   it remains a function of the executive branch of government to

21   make the final call both as to classification of Mr. Browndorf

22   as well as placement.

23            MR. FAHL:  Yes.  Thank you, your Honor.  We request

24   that Mr. Browndorf be housed in a facility as close to the

25   Central District of California as possible.  We'd also ask that

1    he's, if applicable, that you refer that he be allowed to

2    partake in the 500-hour program.

3         THE COURT:  I'll include both of those

4    recommendations.

5         The judgment will be silent on any sentence that Mr.

6    Browndorf might receive should he be found guilty of one or

7    more of the offenses pending in the Maryland case.  Since he

8    has not been sentenced, this Court has no ability to either

9    make this sentence either concurrent with or consecutive to any

10   sentence that has not been imposed.

11        Since he has been on pretrial release in this case, the

12   sentence that the Court imposed today will operate to run from

13   today's date together with any time he may have spent in

14   custody in this case.

15        In other words, since his bond has been revoked in the

16   Maryland case, that is, Case No. 22-CR-291, the time that he

17   has spent in custody concerning that bond being revoked is

18   solely attributable to that case and not this case, so there's

19   no mistaking or confusion as to his custodial status.

20        Are there any other matters that we need address, Mr. Fahl

21   or Mr. Knight?

22        MR. FAHL:  No --

23        MR. KNIGHT:  Your Honor -- I'm sorry, go ahead, Brian.

24        MR. FAHL:  Not from me, your Honor.

25        MR. KNIGHT:  Your Honor, just one brief housekeeping

1    point. I think I heard the Court say as it was imposing

2    sentence and specifically describing the leadership enhancement

3    that Mr. Browndorf received, I thought I heard the Court say

4    that the other participants identified by the Government in

5    support of the enhancement might not have risen to be

6    criminally culpable. I know the Court knows the application

7    note to that guideline provision requires that a participant be

8    someone who is criminally responsible for the commission of the

9    offense. I was hoping the Court could clarify that in support

10   of its finding that the enhancement applies that at least one

11   of PF, MS, or BR met that definition of being criminally

12   responsible within the meaning of the application note.

13       Alternatively, I wonder if the Court would be comfortable

14   indicating whether it would have imposed the same sentence

15   under the 3553(a) factors regardless of its determination on

16   the sentencing enhancement.

17           THE COURT: Well, on the latter point, the answer is

18   yes. On the former point, that's a matter to be later

19   determined in the -- culpability means a little more than

20   responsible, at least in the view of the Court. So it's

21   abundantly clear that these employees acted at the behest of

22   Mr. Browndorf. Had they taken the time to evaluate what was

23   requested of them, they certainly would not have done so. And

24   so that's why I use the term wittingly and/or unwittingly.

25   That doesn't excuse criminal responsibility.

1    MR. KNIGHT:  Thank you, your Honor.  And I'll just say

2    for the record, too, in the Government's view, that's

3    especially true in this case because some of the offenses that

4    they might technically have been criminally responsible for but

5    were not ultimately charged with include the Title 26 7202

6    offense of which Mr. Browndorf was convicted, which as the

7    Court knows, has that lesser mens rea requirement.  Thank you,

8    your Honor.

9        THE COURT:  Thank you.

10    Mr. Fahl, as you are aware, pursuant to the teachings of

11    the US Supreme Court in *Roe v. Flores-Ortega* decided in

12    February of 2000, you have an obligation to confer with your

13    client as to the matter of any appeal in connection with either

14    having plead guilty to the conduct charged in Count 9 or the

15    sentence that the Court imposed this morning, and you have an

16    obligation to confer with him with respect to any appeal and be

17    guided by any request that he may make of you in that regard.

18    In the event he elects to forego such an appeal, I would

19    ask that as his counsel, you formally notify the Court, whether

20    by pleading or letter, indicating that you have discussed with

21    your client his right of appeal and that he has elected to

22    forego such an appeal.

23    Should the latter be the case, I would also ask that on

24    whatever form of communication you use with the Court, you

25    include a signature line for Mr. Browndorf to have serve as an

1   acknowledgment both of having been advised of his right of

2   appeal and that he has elected to forego such an appeal.

3        The Court stands in recess until 11:30.

4            (At 11:16 a.m. the hearing ended.)

```
 1                    C E R T I F I C A T E

 2

 3                    I, JENNIFER L. STAKE, RDR, CRR, an Official

 4    Court Reporter for the United States District Court for the

 5    Eastern District of Wisconsin, do hereby certify that the

 6    foregoing is a true and correct transcript of all the

 7    proceedings had in the above-entitled matter as the same are

 8    contained in my original machine shorthand notes on the said

 9    trial or proceeding.

10

11

12    Dated this 7th day of December, 2023.

13    Milwaukee, Wisconsin.

14

15

16                    Jennifer L. Stake, RDR, CRR
                    United States Official Court Reporter
17                  517 East Wisconsin Avenue, Room 324
                           Milwaukee, WI   53202
18

19                    Jennifer_Stake@wied.uscourts.gov

20

21

22    ELECTRONICALLY SIGNED BY JENNIFER L. STAKE
      Official Court Reporter, RDR, CRR
23    _____

24

25
```